Draft # 2 – after oral argument

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

JAMES ELWIN MORSE,

                        Plaintiff,

                -vs-

MICHAEL J. ASTRUE, *Commissioner of Social Security Administration*,

                        Defendant.

**DECISION & ORDER**

12-CV-6225-CJS

**APPEARANCES**

For Plaintiff:                      Jonathan P. Foster, Sr., Esq.
                                         Foster Law Office
                                         2268 Elmira Street
                                         P.O. Box 400
                                         Sayre, PA 18840
                                         (570) 888-1529

For the Commissioner:          Kathryn L. Smith, AUSA
                                         Kelly Geary, Law Student[1]
                                         U.S. Attorney's Office
                                         100 State Street Room 620
                                         Rochester, NY 14614
                                         (585) 263-6760

## INTRODUCTION

**Siragusa, J.** Before the Court is a motion for judgment on the pleadings, ECF No. 8, filed by the Commissioner of Social Security on January 10, 2013. The issue presented is whether the Commissioner's decision that Plaintiff was not disabled is

---

[1] Kelly Geary, a law student at Vermont Law School, was permitted to argue upon an application submitted pursuant to W.D.N.Y. L.R. 83.6. Order, Jun. 10, 2013, ECF No. 14.

supported by substantial evidence. For the reasons stated below, the Commissioner's decision is affirmed.

## BACKGROUND

The Commissioner alleges that his final decision was supported by substantial evidence. In support of his position, he lays out the five-step sequential analysis required in determining whether or not a claimant is disabled.

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The ALJ determined that Plaintiff has not engaged in any substantial gainful activity since the alleged onset date of May 1, 2005. R. 17.

Step two requires the ALJ to determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c) and 416.920(c). The ALJ determined that Plaintiff does have severe impairments, consisting of: asthma, obesity, anxiety disorder, depressive disorder, impulse control disorder, history of attention deficit hyperactivity disorder, and history of polysubstance abuse. R. 17.

Step three requires the ALJ to "determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926)." R. 16. The ALJ determined that Plaintiff's impairments do not meet or medically equal one of the listed impairments. R. 19.

Prior to proceeding to step four, the ALJ must determine the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e) and 416.920(e).

> An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

R. 16–17. In that regard, the ALJ determined that Plaintiff,

> has the residual functional capacity to perform a wide range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). Specifically, the claimant can occasionally lift, carry, push, or pull no more than 50 pounds; can frequently lift, carry, push, or pull up to 25 pounds; can stand or walk, in combination, for about 6 hours in an 8-hour workday with normal breaks; can sit for 6 hours in an 8-hour workday with normal breaks; should avoid concentrated exposure to temperature extremes, humidity, wetness, fumes, gases, odors, and other respiratory irritants; has mildly limited ability to maintain attention and concentration; can work in low stress environment defined as occasional decision-making and occasional interaction with co-workers and the general public; but is otherwise able to understand, remember and carry out simple 1-2 step work instructions; make judgments commensurate with the functions of unskilled work activity; respond appropriately to supervision, co-workers, and usual work situations; and deal adequately with changes in a routine work setting.

R. 21.

Step four requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. § 404.1520(f) and § 416.920(f). The ALJ determined that Plaintiff had no past relevant work. R. 27. Relying on the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2, the ALJ determined that Plaintiff could perform jobs that exist in the national economy in significant numbers. R. 28.

## STANDARD OF LAW

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the statute directs that when considering such a claim, the district court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v Nat'l Labor Relations Bd.*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938). Section 405(g) thus limits the district court's scope of review to determining whether the Commissioner's findings were supported by substantial evidence. *See*, *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The district court is also authorized to review the legal standards employed by the Commissioner in evaluating a plaintiff's claim.

The district court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Lynn v. Schweiker*, 565 F. Supp 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639 (2d Cir. 1988).

## DISCUSSION

Plaintiff's memorandum of law raises two issues which the Court will address in the order in which were raised. In doing so, the Court has considered Plaintiff's memorandum of law in opposition, and the Commissioner's memoranda of law in support of the Commissioner's motion and reply to Plaintiff's opposition.

### *Treating Physician Rule*

Plaintiff claims the ALJ erred when he failed to properly consider and explain why he was rejecting the treating source testimony of Michele Pavillard, D.O., a board certified psychiatrist. In his decision, the ALJ wrote about Dr. Pavillard's medical assessment stating that her,

> opinion is based on only one examination of the claimant and appears to be based primarily on the claimant's self-reports of symptoms and functional limitations for purpose of his claim for benefits. Furthermore, the claimant's former mental health care providers at the Groveland correctional facility did not provide similar function limitations based on repeated examinations of the claimant during his incarceration....
>
> Dr. Pavillard's opinion is not entitled to controlling weight because the claimant only recently began treatment with Dr. Pavillard April 2010 and the new psychiatrist is not considered a treating source under the Federal regulations. Dr. Pavillard's opinion was also based on one examination of the claimant. It is noted that the consultant psychologist's opinion is entitled to greater weight than the treating source opinion provided by Dr. Pavillard because Dr. Finnerty's opinion is more consistent with the record considered in its entirety, including the claimant's course of treatment and activities of daily living outlined above.

R. 13. The ALJ also noted that he, "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527...." R. 7. That section of the Regulations reads in pertinent part as follows:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be

obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 CFR § 404.1527(c)(2). The same regulation also contains language concerning "[l]ength of the treatment relationship and the frequency of examination," which states:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

*Id.* § 404.1527(c)(2)(i).

Although Plaintiff concedes that Dr. Pavillard only examined him once on April 29, 2010, he points out that she additionally relied upon an interview with Plaintiff's parents, and records collected by his mother, specifically treatment records from various medical facilities, including the time Plaintiff spent at Groveland Correctional Facility. Plaintiff contends that the ALJ substituted his own opinion for that of the treating physician and did so without sufficient explanation. To support this argument, he relies on a case from the Middle District of Pennsylvania, *Rieder v. Apfel*, 115 F. Supp. 2d 496 (M.D. Pa. 2000):

> "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales* [*v. Apfel*],

> 225 F.3d 310 [(3rd Cir. 2000)], 2000 U.S. App. LEXIS 21231, at *19, 2000 WL 1196330, at *6 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987). In addition, "a treating physician's report not only may be given more weight, it must be given controlling weight if so supported. 20 C.F.R. § 404.1527.
>
> When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ may choose whom to credit in its analysis, but "cannot reject evidence for no reason or for the wrong reason." *Morales*, 225 F.3d 310, 2000 U.S. App. LEXIS 21231, at *20, 2000 WL 1196330, at *6 (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). In choosing to reject the evaluation of a treating physician, "an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 2000 WL 1196330, at *6 (quoting *Plummer*, 186 F.3d at 429); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988).

*Rieder*, 115 F. Supp. 2d at 501. The *Rieder* court's description of the treating physician rule does not differ from the standard the ALJ applied in reaching his determination that Dr. Pavillard's conclusion was not well supported by continuing observation of the patient's condition over a prolonged period of time, and was contradicted by other medical evidence in the Record. For example, the ALJ cited to Plaintiff's treating physicians at both the Veterans Affairs Medical Center ("VAMC") and Groveland Correctional Facility. He noted that upon release from prison, Plaintiff's global assessment of functioning ("GAF") was 65–66. R. 13. The VAMC report, dated August 13, 2008, by Peter A. In, M.D., assessed a GAF score of 55. R. 312. The Record also contains a consultative psychiatric evaluation conducted by Kavitha Finnity, Ph.D., a licensed psychologist on November 3, 2008. Dr. Finnity concluded that plaintiff suffered from major depressive disorder, moderate, high blood pressure, and asthma, recommended he continue with the psychological and psychiatric treatment. R. 329. Based on its review of the ALJ's decision, the Court concludes that although the ALJ

incorrectly stated that Dr. Pavillard "is not considered a treating source," he nevertheless properly compied with the Regulation concerning the weight to be given to the medical evidence and adequately explained the basis for not giving controlling weight to Dr. Pavillard's opinion, which was based on other medical evidence in the record.

*Development of the Record*

Plaintiff contends that the ALJ failed to provide the necessary assistance to him for appropriate development of the record. In particular, he asserts that the ALJ, "should have required a mental-health evaluation of the plaintiff following receipt of Dr. Pavillard['s] report which extensively details the plaintiff mental-health limitations." Pl.'s Mem. of Law at 16. The Court notes that at the hearing, plaintiff was represented by legal counsel. R. 34. Further, at the end of the administrative hearing, the ALJ stated, "as I indicated, counselor, will hold the record open 30 days for you to provide that additional information...." R. 88. The preceding discussion on the record indicates that the ALJ held the record open to obtain the results of two evaluations: an intelligence reading test on March 29, the same week as the hearing, and a mental-health exam scheduled for the end of April. R. 38–39. The hearing took place on April 1, 2010, and Corning, New York, and in his decision, dated September 22, 2010, the ALJ noted the following:

> At the hearing, the undersigned health record open in order to allow the claimant's representative the opportunities to submit records from the claimant's psychiatrist, Michelle Pavillar, M.D., and the Veterans Affairs Medical Center in Bath, New York (Exhibits 17F–19F). As of the date of this decision, no evidence has been received by the Office of Disability Adjudication and Review.

R. 15. Exhibit 17F consists of progress notes from the Bath VAMC dated March 29,

2010; Exhibit 18F is the psychiatric evaluation from Michelle Pavillard, D.O., dated July 16, 2010; Exhibit 19F is the same psychiatric evaluation from Dr. Pavillard, obviously a duplicate of the first. Plaintiff does not indicate that any further medical evidence was forthcoming or available.

In *Lamay v. Astrue*, 562 F.3d 503 (2d Cir. 2009), the Second Circuit noted the duty on an ALJ to develop the record in connection with a claimant proceeding *pro se*, stating:

> The Commissioner of Social Security is not obligated to provide a claimant with counsel, but where a claimant proceeds *pro se*, the ALJ has a duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980) (internal quotation marks omitted); *accord Cruz*, 912 F.2d at 11 (describing an ALJ's "heightened duty").

*Lamay*, 562 F.3d at 509. With regard to pursuing further medical evidence, in this case, Plaintiff was represented by counsel throughout, and because counsel indicated further medical evidence was coming, the ALJ held the record open to receive that evidence which, evidently, was not produced. Plaintiff's argument that the ALJ should have required a mental health evaluation is unsupported by any citation to case law, Regulation, or Ruling. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). Plaintiff does not say to any gaps in the medical record requiring supplementation, or any ambiguity requiring clarification.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, ECF No. 8, is granted. The Clerk is directed to enter judgment for the Commissioner and close this case.

DATED:    June 25, 2013
               Rochester, New York

<u>/s/ Charles J. Siragusa</u>
CHARLES J. SIRAGUSA
United States District Judge